IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| LIGIA MUNTEANU * <br> * <br> PLAINTIFF, * <br> * <br> v. * <br> * <br> DETROIT BISTRO, LLC, ET AL. * <br> * <br> DEFENDANTS. * | Case No.: 2:19-cv-11085-MAG-MKM |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT IN FAVOR OF PLAINTIFF LIGIA MUNTEANU AND AGAINST DEFAULTED DEFENDANTS BULLDOG ENTERPRISE, LLC AND ALOIS PETER WARREN, II**

Pursuant to Federal Rule 55, Plaintiff Ligia Munteanu ("Plaintiff"), by and through undersigned counsel, hereby files her Motion and Memorandum in Support of an Order of Default Judgment in favor of Plaintiff and against Defendants Bulldog Enterprise, LLC ("Bulldog") and Alois Peter Warren, II ("Warren"), jointly and severally. In support, Plaintiff states as follows:

**PROCEDURAL BACKGROUND**

1.  On April 15, 2019, Plaintiff commenced the above captioned action to recover unpaid wages, statutory liquidated damages, and attorney's fees and costs under 29 U.S.C. the Federal Fair Labor Standards Act 29 U.S.C. § 201, *et seq*. ("FLSA") and Michigan's Workforce Opportunity Wage Act, M.C.L. § 408.411, *et seq*. (also known as the Michigan Minimum Wage Law )("MMWL"). [Dkt. 1].

2.  On November 19, 2019, Plaintiff filed an Amended Complaint seeking identical recovery under the FLSA and MMWL, but adding Bulldog and Warren, individually, as additional Defendants.

  3. Bulldog and Warren were subsequently served with a copy of the Summons and the operative Complaint. [Dkt. 23-24].

  4. Bulldog and Warren failed to Answer or otherwise respond to Plaintiff's operative Complaint within the time permitted under the Federal Rules and, following Plaintiff's request for the same, on February 13, 2020, the Court issued an Clerk's Entry of Default as to Bulldog and as to Warren, individually [Dkts. 30-31].

  5. More than thirty (30) days has passed since the Clerk's Entry of Default as to Bulldog and Warren and neither has sought to vacate or otherwise challenge the Clerk's Entry of Default.

## VERIFIED FACTS IN SUPPORT OF DEFAULT JUDGMENT[1]

  1. For the period of about August 2012 through about July 2017, Plaintiff was employed as an exotic dancer at the Club Venus Gentlemen's Club located at 9506 Michigan Avenue, Detroit, Michigan 48210.

  2. During the period of Plaintiff's employment, a limited liability company called Bulldog Enterprise, LLC, owned and operated as the Club Venus Gentlemen's Club.

  3. During the period of Plaintiff's employment, a man named Warren was the owner of Bulldog and was the primary owner and operator of Club Venus.

  4. During the period of Plaintiff's employment, Club Venus operated as a gentlemen's club featuring nude and semi-nude dancing of female exotic dancers, including Plaintiff.

---

[1] In support of the Verified Facts in Support of Default Judgment section, Plaintiff has supplied the Court with a sworn declaration affirming all facts set forth. *See* Sworn Declaration of Ligia Munteanu ("Plaintiff Declaration") attached hereto as Exhibit 1.

5. During the period of Plaintiff's employment, Club Venus sold beer, wine, and liquor to the customers that came to the club.

6. Based on Plaintiff's observations, in each year that Plaintiff worked at Club Venus, Club Venus had sales of beer, wine, and liquor exceeding $500,000.00.

7. During the period of Plaintiff's employment, Warren was the most senior manager in charge of the operation of Club Venus.

8. During the period of Plaintiff's employment, Warren was the individual that oversaw and was ultimately in charge of the day-to-day business operations of Club Venus.

9. During the period of Plaintiff's employment, Warren had the power to hire, fire, discipline, suspend, and terminate all employees at Club Venus, including all exotic dancers, Plaintiff included.

10. During the period of Plaintiff's employment, the management of Club Venus, Warren included, classified Plaintiff as an independent contractor rather than as an employee.

11. At no time during Plaintiff's period of employment did the club pay Plaintiff any wages for her work as an exotic dancer at Club Venus.

12. During the period of Plaintiff's employment, Club Venus management, Warren included, treated Plaintiff like an employee and not an independent contractor.

13. During the period of Plaintiff's employment as an exotic dancer at Club Venus, Plaintiff was wholly dependent on Club Venus operating successfully as a gentlemen's club for Plaintiff to make money in the form of tips from customers while working at the club.

14. During Plaintiff's period of employment, Plaintiff did not participate in any managerial decisions affecting Club Venus' business operation.

15. During Plaintiff's period of employment, Plaintiff did not invest in the cost of Club Venus' labor or business expenses.

16. During Plaintiff's period of employment, Plaintiff did not share or contribute to the cost or strategies related to Club Venus' advertising, business strategy, or decisions regarding enhanced atmosphere or style of the club or related overhead costs.

17. During Plaintiff's period of employment, all of decisions, costs, and expenses related to the operation of Club Venus were incurred exclusively by Club Venus and Warren to attract or keep customers.

18. During Plaintiff's period of employment, Club Venus operated a strip club - - and Plaintiff was among Club Venus' strippers.

19. At all times during Plaintiff's period of employment at Club Venus as an exotic dancer, Plaintiff relied on Club Venus to advertise to attract new customers to the club to pay Plaintiff in tips so that she could earn money.

20. At all times during Plaintiff's period of employment at Club Venus as an exotic dancer, Plaintiff relied on Club Venus to create, keep, and maintain a club atmosphere that persuaded customers to return to the club for repeat business.

21. At all times during Plaintiff's period of employment at Club Venus, Plaintiff relied on Club Venus to set desirable club operation hours, competitive pricing on food, drinks, customer admission, and private dance options and specials available for customers to purchase and the prices of those same dances so that Plaintiff could earn tips for performing dances.

22. During Plaintiff's period of employment, Club Venus, Warren included, controlled and used discretion in the hiring process and determined which dancers, including Plaintiff, would be hired.

23. During Plaintiff's period of employment, Club Venus, including Warren, set and determined club rules for dancers, including Plaintiff, and controlled and used discretion applying discipline to dancers, including Plaintiff, including decisions as to who would receive fines, suspensions, or termination.

24. During Plaintiff's period of employment, Club Venus, including Warren, controlled the hours the club would operate.

25. During Plaintiff's period of employment, Club Venus, including Warren, controlled and used discretion in determining what shifts were available for dancers, including Plaintiff, to work at the club and when and if a dancer, including Plaintiff, could work a desired shift.

26. During Plaintiff's period of employment, Club Venus, including Warren, set and controlled the sign-in, sign-out, and other record-keeping procedures of the club.

27. During Plaintiff's period of employment, Club Venus, including Warren, set and created the names, length, and description of private and semi-private dances offered to customers in the club.

28. During Plaintiff's period of employment, Club Venus, including Warren, set the pricing for private and semi-private dances offered by dancers, including Plaintiff, in the club.

29. During Plaintiff's period of employment, Club Venus, including Warren, set and advertised specials (like 2-for-1 specials) for private and semi-private dances in the club.

30. During Plaintiff's period of employment, Club Venus, including Warren, controlled where and when each dancer, including Plaintiff, could dance for Club Venus' customers (*e.g.* to appear on stage when called; to perform with one or more dancers when the club was crowded; and to perform private or VIP dances in the designated area).

31. During Plaintiff's period of employment, Club Venus, including Warren, controlled the advertising for the club including where and when the club chose to advertise, and the clientele targeted by the advertisement.

32. During Plaintiff's period of employment, Club Venus, including Warren, controlled the final determination of the music style played within the club.

33. During Plaintiff's period of employment, Club Venus, including Warren, controlled what drinks, food, and other entertainment and amenities besides exotic dancing were offered to customers of the club.

34. At no time did Plaintiff have, nor did Club Venus or Warren require that Plaintiff have, any specialized training, skill or talent as a pre-requisite to working as an exotic dancer at Club Venus.

35. During Plaintiff's period of employment, the exact number of shifts Plaintiff worked at the club varied slightly from week to week.

36. During Plaintiff's period of employment, Plaintiff customarily worked about four (4) shifts per week (or more) at Club Venus.

37. During Plaintiff's period of employment, the length of each shift that Plaintiff worked varied slightly from shift to shift.

38. During Plaintiff's period of employment, Plaintiff typically worked shifts lasting about seven (7) (or more) hours.

39. During Plaintiff's period of employment, at the start of each shift that Plaintiff worked, Club Venus required that Plaintiff pay a mandatory fee.

40. During Plaintiff's period of employment, the amount of the fee that Plaintiff was required to pay averaged to about $40.00 (or more) per shift.

41.     For the 3-year period for which Plaintiff seeks recovery in this action, Plaintiff is owed free and clear unpaid minimum wage compensation in the amount of $27,002.00,[2] calculated as follows:

| Dates in 3-Year Statutory Recovery Period | Weeks in 3-Year Statutory Recovery Period | Michigan Min Wage | Average Shifts Per Week | Average Hours Per Shift | Average Hours Per Week | Pre-Kickback Reimburse Min Wage Owed Per Week | Average Kickback Paid Per Shift | Average Kickback Reimbursement Owed Per Week | Total Free & Clear Min Wage Owed Per Week | Total Wages Owed For Date Range |
|---|---|---|---|---|---|---|---|---|---|---|
| April 15, 2016 - December 2016 | 37 | $8.50 | 4 | 7 | 28 | $238.00 | $40.00 | $160.00 | $398.00 | $14,726.00 |
| January 2017 - July 2017 | 30 | $8.90 | 4 | 7 | 28 | $249.20 | $40.00 | $160.00 | $409.20 | $12,276.00 |
| | | | | | | | | TOTAL WAGES OWED | | $27,002.00 |

42.     Based on Plaintiff's personal observations, Plaintiff affirms that Club Venus, its management, and Warren were aware of and had actual knowledge that other gentlemen's clubs in Michigan and elsewhere were being sued by exotic dancers for misclassification and for unpaid minimum wage compensation.

43.     Based on Plaintiff's personal observations, Plaintiff affirms that Club Venus, its management, and Warren were aware of and had actual knowledge that Club Venus' exotic dancers, Plaintiff included, should have been classified as employees and not as independent contractors.

44.     Based on Plaintiff's personal observations, Plaintiff affirms that Club Venus, its management, and Warren were aware the exotic dancers at Club Venus, Plaintiff included,

---

[2] Per the MMWA, the Michigan Minimum Wage during the relevant period was $8.50 per hour from April 15, 2016 through December 2016 and $8.90 per hour from January 2017 through July 2017. See MCLS § 408.414

should have been paid minimum wage compensation in compliance with Federal and Michigan minimum wage laws.

45. Based Plaintiff's personal observations, Plaintiff affirms that Club Venus, its management, and Warren were aware that Club Venus was acting unlawfully in misclassifying exotic dancers, Plaintiff included, as independent contractors and failing to pay exotic dancers, me included, minimum wage compensation in compliance with Federal and Michigan minimum wage laws.

## **LEGAL ANALYSIS**

As set forth above, Bulldog and Warren, (1) paid Plaintiff no wages for hours worked and (2) charged Plaintiff an unlawful "kickback" fee of $40.00 per shift as a condition of her employment. This practice is in plain violation to the FLSA and MMWA that expressly require employers to pay employees at free and clear hourly rates not less than the highest applicable minimum wage (the Michigan Minimum Wage). Thus, liability and damages may be determined, the Court must affirmatively find that Plaintiff was an "employee" of Bulldog and Warren and that Bulldog and Warren were Plaintiff's employers as the terms are defined and applied under the FLSA and MMWA.[3]

---

[3] The FLSA provides that an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). The Sixth Circuit has recognized that the FLSA "contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Fegley v. Higgins,* 19 F.3d 1126, 1131 (6th Cir. 1994) (quoting *Dole*, 942 F.2d at 965). Here, Warren, individually, was the owner and operator in charge of all day to day operations of Club Venus. As such, liability arising from the employee/employer relationship between Plaintiff and Bulldog (Club Venus) extends to Warren, individually. *See* 29 C.F.R. § 791.2(b)(2); *Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003).

## I. BULLDOG AND WARREN WERE PLAINTIFF'S EMPLOYERS UNDER THE FLSA AND MMWA

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Under the statute, "employ" means "to suffer or permit to work." *Id*. § 203(g).[4] The Sixth Circuit recently reiterated that FLSA is a remedial statute and that its definition of "employee" is "strikingly broad." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804, 806 (6th Cir. 2015) (noting that FLSA "'stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles'") (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).

The Sixth Circuit has adopted an "economic realities" test to determine whether an individual is an employee or an independent contractor for FLSA purposes. Regardless of the label an employer gives an individual, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id*. at 807. Courts are to use a six-factor test to assess the economic realities of a given employment situation:

1. The permanency of the relationship between the parties;
2. The degree of skill required for the rendering of the services;
3. The worker's investment in equipment or materials for the task;
4. The worker's opportunity for profit or loss, depending upon her skill;
5. The degree of the alleged employer's right to control the manner in which the work is performed; and
6. Whether the service rendered is an integral part of the alleged employer's business.

---

[4] The definition of "Employ" is identical under the MMWA. MCLS § 408.412 (Employ means to engage, suffer, or permit to work.).

*Id.* (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)). The test is based on a totality of the circumstances, and no factor is dispositive. *Id.*; *see also Hart v. Rick's Cabaret Internat'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013).

The question before this Court is in no way unique. Many courts have addressed whether exotic dancers are employees under the FLSA and parallel state law. The clear majority have found that the dancers are employees. *See, e.g., Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3rd Cir. 2019); *McFeeley v. Jackson St. Entm's, LLC*, 825 F. 3d 235 (4th Cir. 2016); *Reich v. Circle C. Invest., Inc.*, 998 F.2d 324, 329 (5th Cir.1993); *Gilbo v. Agment LLC*, 2020 U.S. Dist. LEXIS 26031 (N.D. Oh. February 14, 2020); *Pizzarelli v. Cadillac Lounge, LLC*, 2018 U.S. Dist. LEXIS 117338 (D. RI. 2018); *Shaw v. Set Enters.*, 241 F. Supp. 3d 1318 (S.D. Fl. 2017); *Hart*, 967 F. Supp. 2d at 912; *Clincy v. Galardi S. Enters., Inc.*, 808 F.Supp.2d 1326, 1343 (N.D. Ga.2011); *Thompson v. Linda and A. Inc.*, 779 F. Supp.2d 139, 151 (D.D.C. 2011); *Morse v. Mer Corp.*, 2010 U.S. Dist. LEXIS 55636 (S.D. Ind. 2010).

Here, like the foregoing cases, the factors and the totality of the circumstances of Plaintiff's relationship at and with Club Venus evinces a clear and mistakable employee/employer relationship under the FLSA and the MMWA. A review and application of the relevant economic realities factors is as follows:

    i.      Permanency of the relationship

Plaintiff was employed as an exotic dancer at Club Venus for the period 2012 through 2017, a period of about five (5) years. This was neither an *ad hoc* nor specially negotiated limited engagement. To the contrary, Plaintiff worked as an exotic dancer at Club Venus, about four (4) shifts per week, about twenty-eight (28) hours per week, for a period of about five (5) years. This extended and continuous relationship between Plaintiff and Club Venus evinces a

strong presumption of an employee/employer relationship. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998).

    ii.    The degree of skill required

Plaintiff did not possess, nor did Club Venus require, any specialized skill as a condition of Plaintiff working at Club Venus as an exotic dancer. Courts have consistently held that exotic dancers "do not exhibit the skill or initiative indicative of persons in business for themselves." *Circle C. Invs.*, 998 F.2d at 328; *Thompson*, 779 F. Supp. 2d at 149-50. Consequently, this factor supports a presumption of an employee/employer relationship.

    iii.    Plaintiff's investment v. Bulldog & Warren's investment

In assessing the weight to give the third factor—whether the worker has made a significant capital investment—the Court "must compare the worker's investment in the equipment to perform his job with the company's total investment." *Keller*, 781 F. 3d at 810. Here, Bulldog and Warren paid and were fully responsible for all costs and expenses associated with the operation of Club Venus. Plaintiff, by contrast, made no investment or other financial contribution to the operation of Club Venus. It is axiomatic therefore that Bulldog and Warren's significant operational investments in the Club Venus supports a conclusion of an employee/employer relationship.

    iv.    Opportunity for profit or loss

Bulldog and Warren were primarily responsible drawing customers to Club Venus. Bulldog and Warren chose the location of the business, set the business hours, maintained the facilities and aesthetics, maintained the inventory of food and beverages, and advertised. *See Circle C. Investments, Inc.*, 998 F.2d at 328; *Hart*, 967 F. Supp. 2d at 920 ("Given Rick NY's control over most critical determinants of the number of customers who visited the Club on any

given night or over time, the Club exercised a high degree of control over a dancer's opportunity for profit."). Thus, Bulldog and Warren were fully responsible for all club profit and took and assumed all the risk for the club's potential financial failure. Consequently, this factor supports a finding of an employer/employee relationship.

    v.    Degree of control exercised by Bulldog & Warren

Bulldog and Warren exercised considerable control over Plaintiff. Some strong examples of control, as affirmed and set forth *supra*., are as follows:

* Club Venus, including Warren, controlled and used discretion in the hiring process and determined which dancers, including Plaintiff, would be hired.

* Club Venus, including Warren, set and determined club rules for dancers, including Plaintiff, and controlled and used discretion applying discipline to dancers, including Plaintiff, including decisions as to who would receive fines, suspensions, or termination.

* Club Venus, including Warren, controlled the hours the club would operate.

* Club Venus, including Warren, controlled and used discretion in determining what shifts were available for dancers, including Plaintiff, to work at the club and when and if a dancer, including Plaintiff, could work a desired shift.

* Club Venus, including Warren, set and controlled the sign-in, sign-out, and other record-keeping procedures of the club.

* Club Venus, including Warren, set and created the names, length, and description of private and semi-private dances offered to customers in the club.

* Club Venus, including Warren, set the pricing for private and semi-private dances offered by dancers, including Plaintiff, in the club.

\* Club Venus, including Warren, set and advertised specials (like 2-for-1 specials) for private and semi-private dances in the club.

\* Club Venus, including Warren, controlled where and when each dancer, including Plaintiff, could dance for Club Venus' customers (e.g. to appear on stage when called; to perform with one or more dancers when the club was crowded; and to perform private or VIP dances in the designated area).

\* Club Venus, including Warren, controlled the advertising for the club including where and when the club chose to advertise, and the clientele targeted by the advertisement.

\* Club Venus, including Warren, controlled the final determination of the music style played within the club.

\* Club Venus, including Warren, controlled what drinks, food, and other entertainment and amenities besides exotic dancing were offered to customers of the club.

The foregoing corroborates that Bulldog and Warren wielded substantial control over the details and economic realities of Plaintiff's exotic dancer duties at Club Venus. As such, this factor similarly weighs in favor of a finding of an employer/employee relationship.

vi. The extent to which Plaintiff's services were integral to the business

Bulldog and Warren owned and operated a gentlemen's club called Club Venus. Club Venus featured exotic and provocative dances by nude and semi-nude female exotic dancers. Plaintiff was employed as a nude and semi-nude exotic dancer, performing exotic and provocative dancers for the customers at Club Venus. Thus, Plaintiff was unquestionably

performing duties that were integral to Bulldog and Warren's business operation. Consequently, this factor weighs directly in favor of an employee/employer relationship.

    vii.    Consideration of all factors

Here, the totality of the circumstances evinces that Plaintiff, in the performance of her exotic dancer work duties at Club Venus:

a. Plaintiff was economically dependent on Bulldog and Warren;

b. Plaintiff was employed continuously at Club Venus as an exotic dancer for a period of several years;

c. Plaintiff had no specialized skills;

d. Plaintiff made no investment in her exotic dancer position as compared to Bulldog and Warren's complete overall business operations investment;

e. Bulldog and Warren's opportunity for profits and risk of loss significant in operating Club Venus while Plaintiff realized no profits and risked no loss;

f. Bulldog and Warren exercised significant control over how Plaintiff performed and earned income in the performance of her job; and

g. Plaintiff's work as an exotic dancer at Club Venus was integral to Bulldog and Warren's operation of Club Venus.

Thus, while Bulldog and Warren may have labeled Plaintiff as an independent contractor, as a matter of economic reality, Plaintiff was an employee of Bulldog and Warren under the FLSA and MMWA. *See Rutherford Food Corp v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act.").

## II. BULLDOG AND WARREN ARE JOINTLY LIABLE FOR UNPAID WAGES AND DAMAGES

As pleaded, affirmed, and as noted *supra.*, (i) Plaintiff typically worked four (4) shifts per week; seven (7) hours per week, for a total of about twenty-eight (28) hours per week. In turn, Bulldog and Warren (i) paid Plaintiff no wages for hours worked and (ii) charged Plaintiff a per-shift kickback in the amount of about forty dollars ($40.00) per shift. Thus, Bulldog and Warren are liable to Plaintiff because Bulldog and Warren failed to pay Plaintiff wages at an hourly rate at least equal to the Federal and Michigan Minimum Wage. *see also Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 485 (D. Md. 1982) (stating that "a prima facie case [for violation of FLSA] can be made through an employee's testimony giving his recollection of hours worked").

To calculate damages, "the Court . . . may rely on affidavits or other evidentiary documents in the record to determine the amount of damages." *Quiroz v. Wilhelm Commercial Builders, Inc.*, 2011 U.S. Dist. LEXIS 132635, at *2 (D. Md. 2011). "The Court may award damages based on Plaintiff's testimony even though the amounts claimed are only approximated and not perfectly accurate." *Lopez v. Lawns R Us*, 2008 U.S. Dist. LEXIS 112120, at *3 (D. Md. 2008). Additionally, Plaintiff is entitled to recover an amount equivalent to the amount she paid Club Venus as a "kickback" tip-in fee. *See McFeeley v. Jackson St. Entm't, LLC*, No. DKC-12-1019, 2015 U.S. Dist. LEXIS 58805, at *2 (D. Md. 2015), *aff'd*, 825 F.3d 235 (4th Cir. 2016) (awarding damages for unpaid wages and daily tip-in fees Plaintiffs paid to Defendants).

In accord with the foregoing calculation directive, and applying the facts set forth above and affirmed in Plaintiff's declaration, Plaintiff is owed entitled to recover unpaid wage compensation in the amount of $27,002.00, calculated as follows:

| Dates in 3-Year Statutory Recovery Period | Weeks in 3-Year Statutory Recovery Period | Michigan Min Wage | Average Shifts Per Week | Average Hours Per Shift | Average Hours Per Week | Pre-Kickback Reimburse Min Wage Owed Per Week | Average Kickback Paid Per Shift | Average Kickback Reimbursement Owed Per Week | Total Free & Clear Min Wage Owed Per Week | Total Wages Owed For Date Range |
|---|---|---|---|---|---|---|---|---|---|---|
| April 15, 2016 - December 2016 | 37 | $8.50 | 4 | 7 | 28 | $238.00 | $40.00 | $160.00 | $398.00 | $14,726.00 |
| January 2017 - July 2017 | 30 | $8.90 | 4 | 7 | 28 | $249.20 | $40.00 | $160.00 | $409.20 | $12,276.00 |
| | | | | | | | | TOTAL WAGES OWED | | $27,002.00 |

Further, Section 16(b) of the FLSA[5] provides that an employer who violates the FLSA "shall be liable for liquidated damages in an amount equal to unpaid back wages." *Dole,* 942 F.2d at 967. "[U]nder the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages." *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009). "Rather, they are considered 'the norm'[.]" *Id.* (quoting *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 585 (6th Cir. 2004)).

"To be relieved of liability for liquidated damages, the employer has the "substantial burden" of proving to the trial court that its acts giving rise to the suit are both in good faith and reasonable.'" *Dole*, 942 F.2d at 968. "In the absence of such proof [, however,] a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Elwell v. University Hospitals Home Care Services,* 276 F.3d 832, 840 (6th Cir. 2002).

---

[5] The MMWA provides nearly identical relief, as follows: "If an employer violates this act, the employee affected by the violation, at any time within 3 years, may … (a) Bring a civil action for the recovery of the difference between the amount paid and the amount that, but for the violation, would have been paid the employee under this act **and an equal additional amount as liquidated damages together with costs and reasonable attorney fees as are allowed by the court**." See MCLS § 408.419 (emphasis supplied).

"The good faith standard under the FLSA is more stringent than it is in many other contexts. Even negligent, as opposed to willful mis-classification of an employee is enough to prevent the application of the good faith exception." *Chao v. First Nat'l Lending Corp.*, 516 F. Supp. 2d 895, 902 (N.D. Ohio 2006). "To prove that it acted in good faith, an employer must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions.'" *Martin*, 381 F.3d at 584. "The employer has an affirmative duty to ascertain and meet the FLSA's requirements[.]" *Id.; Chao*, 516 F. Supp. 2d at 902 (describing an employer's "duty to investigate potential liability under the FLSA").

Here, Bulldog and Warren have not and cannot show or demonstrate any good faith basis for believing that Club Venus' misclassification of Plaintiff and failure to pay Plaintiff minimum wage compensation as required by Federal and Michigan law complied with the FLSA and MMWA minimum wage requirements. As such, Bulldog and Warren cannot meet their standard to avoid FLSA or MMWA double (2x) and such damages must be awarded.

## CONCLUSION

Based on Plaintiff's well pleaded facts and attached sworn declaration, Plaintiff has presented the Court with *prima faci* proof that (i) Bulldog and Warren were Plaintiff's employers under the FLSA and MMWA; (ii) Bulldog and Warren failed to pay Plaintiff minimum wage compensation as required by the FLSA and MMWA; (iii) Bulldog and Warren now owe Plaintiff unpaid minimum wage compensation in the amount of $27,002.00; (iv) Bulldog and Warren cannot meet their burden to avoid double (2x) damages under the FLSA and MMWA; and (v) Bulldog and Warren now owe Plaintiff statutory liquidated damages in the amount of $27,002.00. For this reason, Plaintiff requests Default Judgment to be entered in favor of Plaintiff and against Bulldog and Warren, jointly and severally, as follows:

1. Unpaid Wages Due to Plaintiff: $27,002.00; plus

2. Statutory Liquidated Damages Due to Plaintiff: $27,002.00; plus

3. An award of Attorney's Fees and Costs to be determined by post-judgment petition.

                                                            Respectfully submitted,

Dated: March 26, 2020                              /s/ Gregg C. Greenberg
                                              Gregg C. Greenberg, Esq.
                                              Zipin, Amster & Greenberg, LLC
                                              8757 Georgia Avenue, Suite 400
                                              Silver Spring, Maryland 20910
                                              (301) 587-9373 (ph)
                                              Email: GGreenberg@ZAGFirm.com

                                              *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of March 2020, a true and correct copy of the foregoing Motion for Default Judgment and Proposed Order was electronically served on all counsel of record and was served, by first class mail, postage pre-paid, on:

    Alois Peter Warren, II
    1314 Caribbean Way
    Lantana, Florida 33462

                                            /s/ Gregg C. Greenberg
                                            Gregg C. Greenberg